THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* WILLIAM BRIGGS, JR., Appellant.

Fourth Department, October 26, 1967.

158

Raymond L. Sciarrino for appellant.

Scott W. Crane, District Attorney (J. Robert Houston of counsel), for respondent.

BASTOW, J. P. On January 12, 1964 a burglary and fire occurred at the central school building in the village of Mt. Morris in Livingston County. The following day appellant — then 17 years old — was taken into custody and made an inculpatory written statement to one Gilbride, the Undersheriff of the county. On January 14 an indictment was returned charging him and a codefendant with arson, third degree, burglary, third degree, and petit larceny. The following day appellant was arraigned and pleaded guilty to all counts. On January 27 he was sentenced to a term of 7½ to 15 years on the arson count and to lesser concurrent terms on the other counts.

Following a hearing in 1965 he was denied coram nobis relief by the sentencing Judge (ERWIN, J.) and a year later a similar application was denied by the present County Judge (MONTESANO, J.).

The District Attorney and present Sheriff of the county (who was Undersheriff in 1964 and obtained the statement from appellant) with commendable candor concede that appellant's written inculpatory statement was only made after Gilbride had told him that the sentence would not exceed five years and that if defendant's conduct was good he would be released after serving a year and a half. This statement apparently was made in good faith for Gilbride testified at the hearing herein that it

was his understanding in 1964 that a sentence in excess of five years could not be imposed on one between the ages of 16 and 21 (cf. Penal Law, § 2184-a). What the official did not know was that the court had power to fix a longer period of imprisonment within the limits otherwise provided by statute for a particular crime. (Correction Law, § 61, subd. 2.)

It further appears that before the guilty plea was entered appellant's lawyer talked with the District Attorney about having one or more of the counts in the indictment dismissed or reduced and the prosecutor stated " that it was a waste of time to bother discussing the matter — that the most that the defendant could receive (would be) one to five years in the reformatory." After the guilty plea had been entered and the night before the original date (January 22) fixed for sentencing defense counsel was told by the then Sheriff and Undersheriff " that Judge ERWIN was not going to go along with the one to five year sentence."

Thus, while there is no direct proof of the fact, it is reasonably clear that the sentencing Judge had knowledge of some — if not all — of the facts — that both confession and plea of guilty rested on representations of the police officer and prosecutor, respectively, that the sentence would not exceed five years.

On January 22 defense counsel moved for postponement of sentence for five days " on the ground (that) at the time the plea of guilty was entered both my client and myself were under the impression the maximum sentence he could receive would be five years in Elmira." The court granted the adjournment but significantly made no attempt to explore the facts surrounding the entry of the guilty plea. On January 27 sentence was routinely imposed and again the County Judge made no effort to ascertain the underlying facts relating to either plea of guilty or confession.

In denying *coram nobis* relief the County Court sustained the position of the District Attorney that the guilty plea had been validly entered and that appellant was attacking the validity of the confession and this he could not do after entry of such a plea (*People* v. *Nicholson*, 11 N Y 2d 1067; *People* v. *Dash*, 16 N Y 2d 493; *People* v. *Griffin*, 16 N Y 2d 508). This, we conclude, took a much too narrow view of the issue presented. (Cf. *People* v. *Freeman*, 7 A D 2d 960; *People* v. *Sullivan*, 276 App. Div. 1087.)

Upon the hearing herein there was proof of these facts and also that during the preliminary questioning of appellant by the officers he asked for an attorney but the request was ignored. As soon as he was taken into custody defendant's mother tele-

phoned an attorney who went to the county jail and asked to see Briggs. He was told that the youth was being questioned. The lawyer waited and some time later was told by the Undersheriff that an inculpatory written statement had been made by appellant.

This is the typical case where the confession was the "fundamental element in the construction of the People's case." Faced with knowledge that the confession had been made, appellant and his counsel had small choice and the guilty plea was entered the day following indictment and three days after the burglary and fire. The mistaken and untrue representations that induced the confession and plea of guilty could have been honored by the sentencing Judge. It appears, however, that this was no routine crime, but one that had attracted considerable public attention. The Judge apparently decided that the mistaken representations of the Undersheriff and District Attorney should be ignored and a more severe punishment imposed. This fact became known to appellant and his lawyer after the guilty plea had been entered.

In this posture of the case a situation was presented that demanded adequate factual exploration and advice by the court to this 17-year-old defendant. The dilemma in which he and his counsel found themselves is apparent. The fact that he had entered a guilty plea (and probably that he had confessed the crimes) doubtless had been thoroughly publicized in this small rural county. His sole choice was to move for permission to withdraw his plea with no assurance from the court that the motion would be granted. We conclude that upon the facts presented the failure to make such a motion is of no consequence. (Cf. *People* v. *Serrano,* 15 N Y 2d 304, 309.)

Once the facts became known the initiative rested on the County Judge. The defendant should have been advised that if his guilty plea had been prompted by the confession and if the confession had been induced by a misrepresentation of fact made by a public official a motion to withdraw the plea would be granted. The People's reliance upon *People* v. *De Flumer* (16 N Y 2d 20) is misplaced. Therein no claim was made that the confession had been infected by a misrepresentation of fact that the sentencing Judge declined to follow. More pertinent is that portion of the opinion of the dissenting Judges wherein (p. 24) *People* v. *Nicholson* (*supra*) and similar decisions are distinguished in that in those cases it was not brought to the attention of the court at the time of plea or sentence "that a confession, the legality of which was questionable, had induced the plea."

While factually different from the case before us *People* v. *Seaton* (19 N Y 2d 404) enunciates valuable principles for our guidance here. There it was held that before accepting a waiver of counsel and guilty plea from a defendant the court by questioning should satisfy itself that defendant (1) understood the consequences of such waiver and (2) committed an act which constituted a crime and would furnish a basis for the plea.

One of the authorities (American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty, Tent. Draft [Feb., 1967]) cited in *Seaton supra,* pp. 406–407) states (§ 1.5) that the court should not accept a plea of guilty without first determining that the plea is not only voluntary, but is not based on prior plea discussions or a plea agreement.

Without enunciating any rule that such action is mandatory in every case, these suggestions point up the burden that here rested upon the County Judge. The court by appropriate questioning of appellant and his counsel should have determined whether the plea was in fact voluntary or had been entered because of the confession which in turn had been extracted on erroneous factual statements that the court must have known had been made by one or more public officials. We conclude upon all the proof that appellant did not receive that full measure of his constitutional right to due process to which he was entitled.

The order entered February 10, 1967 should be reversed, the judgment of January 27, 1964 vacated, permission granted to appellant to withdraw his plea of guilty, and the matter remitted to Livingston County Court for further proceedings in accordance with this opinion.

HENRY, DEL VECCHIO and MARSH, JJ., concur.

Order of February 10, 1967 unanimously reversed, judgment of January 27, 1964 vacated and permission granted to appellant to withdraw his plea of guilty, and matter remitted to Livingston County Court for further proceedings in accordance with the opinion.